FILED
2021 Jun-21  AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DERRICK JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | _____ |
| | ) | |
| **FRESENIUS USA** | ) | |
| **MANUFACTURING, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1.     This Complaint seeks legal and equitable relief to redress violations of Plaintiff Derrick Johnson's rights secured by the following:

  a.   Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, *et seq.*, as amended; and

  b.   Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, including 42 U.S.C. § 1981a;

  c.   Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601-2654; and

1

      d.     Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(b).

2.    Jurisdiction is proper pursuant to the following:

      a.     28 U.S.C. §§ 1331, 1343(a)(3); and

      b.     42 U.S.C. § 2000e-5(f)(3).

3.    Venue lies within the Northern District of Alabama under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

4.    Plaintiff Derrick Johnson ("Mr. Derrick Johnson") is a resident of Jefferson County, Alabama and is over the age of nineteen (19). Mr. Derrick Johnson is a Black male. At all times relevant to this Complaint, Mr. Derrick Johnson was employed by Defendant Fresenius USA Manufacturing, Inc.

5.    Defendant Fresenius USA Manufacturing, Inc. ("Fresenius") is a corporation conducting business in Jefferson County, Alabama. Fresenius is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b); the ADA, 42 U.S.C. § 12111(5); and as defined by the FMLA 29 U.S.C. § 2611(4).

## ADMINISTRATIVE HISTORY

6.    Mr. Derrick Johnson filed his first Charge of Discrimination against Fresenius with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2019. **(Exhibit A – Charge No. 420-2019-03560)**.

7.    Mr. Derrick Johnson received a Notice of Right to Sue in reference to his 2019 Charge on April 23, 2020. **(Exhibit B)**.

8.      Mr. Derrick Johnson filed his second Charge of Discrimination with the EEOC on February 12, 2021. **(Exhibit C – Charge No. 420-2021-01104).**

9.      Mr. Derrick Johnson received a Notice of Right to Sue in reference to his 2021 Charge on March 19, 2021. **(Exhibit D).**

10.     On April 5, 2021, Mr. Derrick Johnson submitted a Request for Reconsideration with the EEOC regarding the issuance of a Notice of Right to Sue on his 2021 Charge. **(Exhibit E).**

11.     On May 3, 2021, the EEOC declined to reconsider its issuance of the 2021 Notice of Right to Sue. **(Exhibit F).**

12.     Mr. Derrick Johnson's 2021 EEOC Charge is timely because it was filed in February 2021 and contained allegations occurring as of January and February 2021. The EEOC inappropriately dismissed Mr. Derrick Johnson's 2021 Charge as untimely.

13.     This Complaint has been timely filed within 90 days of Mr. Derrick Johnson's receipt of his Notice of Right to Sue concerning his 2021 Charge of Discrimination.

## **FACTS**

14.     Mr. Derrick Johnson is a Black male.

15.     Mr. Derrick Johnson began his employment with Fresenius in 2006 and is currently employed by Fresenius as a truck driver.

16.     Fresenius operates dialysis clinics across the United States. Fresenius drivers can be classified in two broad groups: long haul drivers who transport supplies across the country and CORE drivers who make shorter, local deliveries.

17.     Mr. Derrick Johnson is a CORE driver. CORE drivers can be assigned a variety of routes, including clinic routes, patient home routes, crossdock routes, and retail routes.

18.     Mr. Derrick Johnson's direct supervisor is Daryl Johnson, a Black male.

19.     Mr. Derrick Johnson and Mr. Daryl Johnson report to Mr. Brett Heiner, a White male and the Distribution Center Manager.

**Family Medical Leave Act**

20.     In 2006, Mr. Derrick Johnson's son was born. As a toddler, Mr. Derrick Johnson's son was diagnosed with asthma. During 2006 to 2015, Mr. Derrick Johnson used his sick leave and paid time off to care for his son because he was unaware he was eligible to apply for FMLA until his son's physician told him in 2015.

21.     In 2015, Mr. Derrick Johnson applied for FMLA leave to care for his son and was approved to take intermittent leave.

22.     During 2015 to 2019, Mr. Derrick Johnson used approved, intermittent FMLA leave approximately once per month.

23.     Each time Mr. Derrick Johnson returned from approved, intermittent FMLA leave, Mr. Daryl Johnson and Mr. Brett Heiner denied him overtime work and/or reduced his scheduled shifts and routes.

24.     Because Mr. Derrick Johnson is paid hourly, Mr. Daryl Johnson and Mr. Brett Heiner reduced Mr. Derrick Johnson's weekly pay by cutting his assigned routes and overtime hours.

25.     Mr. Daryl Johnson and Mr. Brett Heiner do not reduce the hours or pay of drivers who do not utilize FMLA leave.

26.     In September 2019 Mr. Derrick Johnson filed his first EEOC Charge against Fresenius alleging discrimination due his disability, race, and use of FMLA leave.

27.     After Mr. Derrick Johnson filed his first EEOC Charge, Mr. Daryl Johnson began incorrectly coding Mr. Derrick Johnson's approved, intermittent FMLA leave.

28.     Per Fresenius policy, FMLA leave should be coded as "PTO FMLA."

29.     Prior to Mr. Derrick Johnson's first EEOC Charge, Mr. Daryl Johnson correctly coded his FMLA leave as "PTO FMLA."

30.     After Mr. Derrick Johnson filed his first EEOC Charge, Mr. Daryl Johnson began incorrectly coding his FMLA leave as "unscheduled PTO."

31.     Mr. Brett Heiner and Mr. Daryl Johnson scored Mr. Derrick Johnson

a 3 out of 5 on his annual performance review in 2019 (with 1 being the most desirable score).

32.     Mr. Brett Heiner and Mr. Daryl Johnson wrote that Mr. Derrick Johnson had "4 call outs" during 2019 and too many "unscheduled PTO" days and used these alleged deficiencies to justify the 3 out of 5 performance review.

33.     However, 3 of the 4 call outs should have been coded as FMLA leave and not "call outs" or "unscheduled PTO."

34.     Mr. Derrick Johnson received a merit raise in 2019, for which he would not have been eligible had he incurred 4 call outs.

35.     Mr. Daryl Johnson and Mr. Brett Heiner incorrectly coded Mr. Derrick Johnson's FMLA leave and used that paper trail to justify giving him lower performance reviews and denying him merit pay increases.

36.     Mr. Derrick Johnson complained to Shawn Murakami in Fresenius's Human Resources and Olivia (LNU) and Aviance (LNU) in Fresenius's Leave Management department about Mr. Brett Heiner and Mr. Daryl Johnson's decision to incorrectly code his FMLA leave.

37.     Following Mr. Derrick Johnson's complaints, Mr. Shawn Murakami investigated Mr. Daryl Johnson's incorrect coding and required Mr. Daryl Johnson to re-enter the Fresenius system and fix his improper coding of Mr. Derrick Johnson's FMLA leave.

38.     Prior to his employment with Fresenius, Mr. Derrick Johnson served in the United States Navy for eight (8) years.

39.     In 2016, Mr. Derrick Johnson was diagnosed with Post Traumatic Stress Disorder (PTSD) stemming from his military service.

40.     In 2020, Mr. Derrick Johnson applied for Family Medical Leave Act (FMLA) leave relevant to his PTSD and was approved to use intermittent leave when his PTSD becomes symptomatic and to receive treatment for his PTSD.

41.     Mr. Derrick Johnson receives ongoing counseling and treatment for his PTSD.

42.     During 2020 and 2021, Mr. Derrick Johnson used FMLA leave approximately once per month in response to his PTSD symptoms and to receive treatment for his PTSD.

43.     Mr. Daryl Johnson and Mr. Brett Heiner continued to deny Mr. Derrick Johnson routes and overtime shifts each time he returned from FMLA leave in 2020 and 2021. Because Mr. Derrick Johnson is paid hourly, Mr. Daryl Johnson and Mr. Brett Heiner reduced Mr. Derrick's Johnson weekly pay by denying him shifts and overtime.

**Americans with Disabilities Act**

44.     In 2014, Mr. Derrick Johnson tore the quadricep muscle in his leg while at work.

45.     Mr. Derrick Johnson's physician issued him permanent restrictions, which included a restriction against squatting and stooping and restrictions against using stairs without a handrail.

46.     Prior to his injury, Mr. Derrick Johnson was assigned to a clinic route with less than 10 daily stops.

47.     Prior to his injury, Mr. Daryl Johnson and Mr. Brett Heiner directed Mr. Derrick Johnson to assist another driver with the clinic route in downtown Birmingham, Alabama every other Tuesday. The clinic route in downtown Birmingham is one of the most difficult clinic routes and requires 12-13 stops per day in very quick succession.

48.     After Mr. Derrick Johnson returned to work following his injury, Mr. Daryl Johnson and Mr. Brett Heiner re-assigned Mr. Derrick Johnson to his previous schedule, including both his regular, slower clinic route and assisting his coworker on the downtown Birmingham clinic route on alternating Tuesdays.

49.     Mr. Derrick Johnson requested an accommodation to his route and informed Mr. Daryl Johnson and Mr. Brett Heiner that he could not perform the downtown Birmingham clinic route on alternating Tuesdays because the route was too strenuous given the numerous stops in such quick succession due to his physical condition.

50.     Mr. Daryl Johnson and Mr. Brett Heiner then directed Mr. Derrick

Johnson to alternate on Tuesdays on the patient home route (rather than the downtown Birmingham clinic route.) Mr. Derrick Johnson could not complete this route because after his injury, he could no longer use stairs without a handrail. Many patient homes have outdoor stairs with no hand rail. The patient home route violated Mr. Derrick Johnson's permanent medical restrictions.

51.     Mr. Derrick Johnson requested an accommodation that he be reassigned and told Mr. Daryl Johnson and Mr. Brett Heiner that he could not perform the patient home or downtown Birmingham clinic route on alternating Tuesdays. Mr. Brett Heiner and Mr. Daryl Johnson re-assigned Mr. Derrick Johnson to his previous clinic route (with less than 10 daily stops) full time.

52.     Mr. Daryl Johnson told Mr. Derrick Johnson that he was "doing him a favor" by allowing him to return to work with restrictions.

53.     Mr. Daryl Johnson told Mr. Derrick Johnson that although he should have received a 40-50/cent per hour pay increase in response to his last performance review, he was only receiving a 20 cent/hour raise due to the time missed from work because of his on the job injury.

54.     After Mr. Derrick Johnson requested an accommodation and a route assignment that he could perform post-injury that complied with his medical restrictions, Mr. Daryl Johnson and Mr. Brett Heiner began reducing Mr. Derrick Johnson's weekly hours and denying him overtime shift assignments which

9

adversely impacted Mr. Derrick Johnson's wages.

## Title VII and § 1981

55.     Mr. Derrick Johnson filed his first EEOC Charge of Discrimination against Fresenius in September 2019, alleging race and disability discrimination.

56.     Mr. Charles Jones, Mr. Melvin Houston, Mr. Orlando Miles, Mr. Leroy Burrell, Mr. Allison Rudolph, and Mr. Kenneth Moore are other Black drivers who also filed EEOC Charges of Discrimination against Fresenius in September 2019. Mr. Charles Jones filed suit against Fresenius in July 2020. 2:20-cv-01017-CLM.

57.     After Mr. Derrick Johnson filed his Charge, Mr. Daryl Johnson and Mr. Brett Heiner began denying Mr. Derrick Johnson shift assignments and overtime hours.

58.     Beginning in November and December 2019 and continuing throughout 2020 and 2021, Mr. Daryl Johnson and Mr. Brett Heiner reduced Mr. Derrick Johnson's weekly hours to an average of thirty (30) to thirty-five (35) weekly hours rather than the forty to sixty (40-60) hours he had worked each week before filing his EEOC Charge.

59.     Additionally, Mr. Daryl Johnson and Mr. Brett Heiner denied Mr. Derrick Johnson overtime which he had been assigned prior to the filing of his EEOC Charge.

60.     On November 23, 2019 and December 7, 2019, Mr. Daryl Johnson and Mr. Brett Heiner gave Mr. Roger Keeton (a White driver) overtime hours and refused to assign Mr. Derrick Johnson the overtime hours. Mr. Keeton only has two years of experience at Fresenius, compared to Mr. Derrick Johnson's fifteen years of employment.

61.     Fresenius hired Mr. Keeton as a patient home driver, but assigned him to Mr. Derrick Johnson's clinic routes after Mr. Derrick Johnson complained of race discrimination.

62.     On January 7, 2020, Mr. Derrick Johnson complained to Mr. Daryl Johnson that Mr. Keeton was being awarded Mr. Derrick Johnson's routes and overtime hours and asked why he had not been assigned overtime. Mr. Daryl Johnson responded that he "would call white guys before [Mr. Derrick Johnson]" and other Black drivers.

63.     Mr. Daryl Johnson also explained that Mr. Derrick Johnson was not assigned overtime because he is "unapproachable." Mr. Daryl Johnson freely and openly communicates with Mr. Derrick Johnson via text message when he needs to issue a work assignment or otherwise communicate.

64.     Mr. Derrick Johnson also asked Mr. Daryl Johnson why a White van driver was assigned to the Mobile route which took hours away from Black drivers. Mr. Daryl Johnson responded, "Them n*ggas down in Mobile tore up a $20,000 van

and peeled the top off a trailer."

65.     Throughout 2020, Mr. Daryl Johnson and Mr. Brett Heiner cut Mr. Derrick Johnson's average weekly hours and denied him overtime which reduced his pay.

66.     Some of the days on which Mr. Derrick Johnson was denied shifts or overtime that White driver or Black drivers who had not complained were awarded include: January 16, 17, 23, 24, 30, and 31, 2020; February 11, 14, 28, and 29, 2020; March 4, 5, 9, and 13, 2020, and April 10, 13-17, 23, 2020.

67.     Mr. Roger Keeton, Mr. Jeff Blackerby, Mr. Patrick Whitmore, and Mr. Mark Creel are White drivers who were assigned hours, routes, and overtime which Mr. Derrick Johnson was denied from 2019-2021.

68.     Mr. Marlon Jones, Mr. Jerome Jones, Mr. Tavarius Mallory, Mr. Roosevelt Williams, and Mr. Howard Hudson are Black drivers who have not complained of race discrimination and who were assigned hours, routes, and overtime which Mr. Derrick Johnson was denied from 2019-2021.

69.     At least once per month during 2020 and 2021, Mr. Derrick Johnson complained of race discrimination and retaliation to Mr. Daryl Johnson, Mr. Eric Winchester (a router) and Melissa LNU and Shawn Murakami (Fresenius Human Resources) that he was being denied routes, shifts, and overtime hours that were being assigned to White drivers and drivers who had not complained.

70.     In March 2021, Mr. Shawn Murakami told Mr. Derrick Johnson that he was being denied overtime and route assignments because he applied for and utilized FMLA.

71.     During 2019, 2020, and 2021, Mr. Derrick Johnson lost wages because Fresenius, Mr. Daryl Johnson, and Mr. Brett Heiner denied him routes and overtime. In 2018, Mr. Derrick Johnson earned $58,318. In 2019, Mr. Derrick Johnson earned $54,228. In 2020, Mr. Derrick Johnson earned $49,739.

72.     Mr. Derrick Johnson still receives 8 hours of pay on days during which he utilizes his FMLA leave, so use of his FMLA leave is not a contributor to his increasingly lower wages.

73.     In March 2020, Fresenius issued Mr. Derrick Johnson his 2019 annual performance review.

74.     Fresenius scores drivers on a scale of 1 to 5 (with 1 being most desirable) in multiple categories for each performance review. Drivers may be awarded a merit raise and increase in pay which correlates with their performance review scores. Whether or not a driver is awarded a merit increase is a subjective decision made by each supervisor.

75.     In 2020, Mr. Daryl Johnson and Mr. Brett Heiner scored Mr. Derrick Johnson a 2 out of 5 on the "Knowledge, Skills, and Abilities" portion of his 2019 annual review.

76.     Mr. Daryl Johnson and Mr. Brett Heiner scored Mr. Derrick Johnson

a 3 out of 5 on the "Core Values" portion of the review, and wrote,

> Derrick approaches his job in a manner that is professional and reaches
> out to his supervisors when he has a concern or issue that needs to be
> addressed. Derrick does truly nice job personifying the proactive,
> reliable and excellent values. However, as he seeks answers to his
> concerns he must gather the facts and openly address them so that the
> proper parties can investigate and come to a solution that is fair and
> objective. Derrick can, at times, come across as adversarial with his
> supervisor and routers. This is not necessary or professional. He should
> make a conscious effort to seek understanding and additional
> knowledge before making judgments. He should also approach
> conversations with colleagues with more respect and calm demeanor -
> this will help put others at ease and make for better and more open
> dialog and more favorable outcomes.

77.     In 2015, prior to Mr. Derrick Johnson's complaints of discrimination,

Mr. Daryl Johnson wrote in Mr. Derrick Johnson's 2015 annual performance review,

that Mr. Derrick Johnson:

> . . . is approachable and interacts well with his coworkers and customers
> alike. He is a good listener and incorporates new processes into his
> duties with ease and professionalism . . . All communication from
> Derrick is honest and truthful. He shows accountability, follows
> through with commitments and takes ownership of all his assigned
> duties . . . Derrick is open and positive through his written and verbal
> communication. He continues to develop strong relationships with his
> co workers and customers. He is consistent in this value . . . Derrick
> enjoys the teamwork exhibited here and can be considered a team
> player. He recognizes teamwork as a critical part of our entire
> operation. He has been frequent to assist anyone who asks and has
> established a strong bond of trust.

78.     Mr. Daryl Johnson and Mr. Brett Heiner scored Mr. Derrick Johnson

at a 3 out of 5 overall for 2019 and assigned him a 2.15% merit raise. Mr. Derrick

Johnson would have been eligible for a larger merit raise if he had received a higher performance review.

79.     In 2019, prior to his complaints of race discrimination, Mr. Derrick Johnson earned a 2.65% merit raise based on his 2018 performance, raising his hourly wage from $24.02 to $24.66.

80.     In 2020, after Mr. Derrick Johnson's complaints of race discrimination and retaliation, Mr. Daryl Johnson and Mr. Brett Heiner issued him a 2.15% merit increase, raising his hourly rate from $24.66 to $25.19. If Mr. Derrick Johnson had received a 2.65% increase (as he did before his complaints of discrimination) his hourly rate would have been $25.31.

81.     An overall performance review of 3 out of 5 lowered Mr. Derrick Johnson's hourly wage and caused him to lose wages.

82.     Mr. Derrick Johnson complained to Mr. Daryl Johnson and Mr. Brett Heiner on March 30, 2020 about the inaccurate and discriminatory performance review.

83.     Mr. Derrick Johnson complained that the accusations that he is "adversarial," "unapproachable," and not "calm" are racist and stereotypical and code words that were only used because he is a Black man. Mr. Daryl Johnson and Mr. Brett Heiner did not accuse any White drivers of being "adversarial," "unapproachable," or not "calm."

84.     Mr. Derrick Johnson further complained that he was being retaliated against for his complaints of race discrimination and his EEOC Charge. Mr. Daryl Johnson and Mr. Brett Heiner criticized Mr. Derrick Johnson in his 2019 annual performance review for the way in which he addressed his concerns.

85.     Mr. Derrick Johnson also complained that he cannot be adversarial with supervisors and routers because being a truck driver is a largely solitary profession and he has limited interaction with other employees.

86.     Mr. Daryl Johnson and Mr. Brett Heiner replied that Mr. Derrick Johnson is adversarial, "when he comes into the building."

87.     Mr. Derrick Johnson told Mr. Daryl Johnson and Mr. Brett Heiner that he felt he was being discriminated against due to his race and asked how Fresenius was going to fix this problem. Mr. Brett Heiner responded, "We aren't going to do anything."

88.     On March 30, 2020, Mr. Derrick Johnson also complained that Mr. Daryl Johnson and Mr. Brett Heiner refused to promote Black or minority candidates to supervisory and management roles.

89.     In 2019, Mr. Daryl Johnson and Mr. Brett Heiner promoted a White employee, Mr. Kelvin Beasley, to Inventory Supervisor rather than Mr. Derrick Johnson.

90.     Mr. Derrick Johnson asked Mr. Daryl Johnson and Mr. Brett Heiner

why Mr. Kelvin Beasley was chosen for the position over Mr. Derrick Johnson. Mr. Daryl Johnson and Mr. Brett Heiner replied that Mr. Kelvin Beasley was "educated and qualified."

91.     Mr. Derrick Johnson possesses the same or similar education and experience that Mr. Kelvin Beasley possesses. Mr. Kelvin Beasley previously worked in the warehouse and had no more special skills or experience that would qualify him (rather than Mr. Derrick Johnson) to work as an Inventory Supervisor.

92.     Mr. Daryl Johnson and Mr. Brett Heiner told Mr. Derrick Johnson that they did not post a job opening for Mr. Kelvin Beasley's position because Mr. Kelvin Beasley was "more than qualified for the job."

93.     Mr. Derrick Johnson was unable to apply for the Inventory Supervisor position because Mr. Daryl Johnson and Mr. Brett Heiner did not post or otherwise advertise the position.

94.     Mr. Brett Heiner also refused to promote two other Black employees, Ms. Celeste Rue and Mr. Jarvius Lundy to the Inventory Supervisor position. Mr. Derrick Johnson, Ms. Celeste Rue and Mr. Jarvius Lundy each have over fifteen (15) years of experience with Fresenius. Mr. Kelvin Beasley has less than fifteen (15) years of experience with Fresenius.

95.     Mr. Derrick Johnson told Mr. Brett Heiner that no minority candidate was promoted by Mr. Brett Heiner during 2013-2020 and that while Mr. Brett Heiner

promoted four White employees, he only terminated, demoted, or laterally transferred Black employees during those years.

96.    Mr. Brett Heiner insisted that "plenty" of minorities were in management and supervisory positions at Fresenius.

97.    Mr. Brett Heiner promoted four (4) White employees to supervisory positions during 2013 to 2020. Ms. Celeste Rue a Black female, trained all four White employees.

98.    Ms. Celeste Rue has more than fifteen (15) years of experience with Fresenius and Fresenius often sends her to travel to other Fresenius locations throughout the country to train employees or give presentations.

99.    Ms. Celeste Rue has more experience than all four (4) White employees promoted by Mr. Brett Heiner, but Mr. Brett Heiner refused to promote a Black female, Ms. Celeste Rue.

100.    Mr. Jarvius Lundy applied for numerous supervisory positions throughout 2013-2020, but was denied in favor of White candidates. Only after Mr. Derrick Johnson filed two EEOC Charges against Fresenius did Mr. Brett Heiner promote Mr. Jarvius Lundy to a supervisory position in June 2021.

101.    Throughout the remainder of 2020 and 2021, Fresenius, Mr. Brett Heiner, and Mr. Daryl Johnson continued to deny Mr. Derrick Johnson shift assignments and overtime and continued to cut Mr. Derrick Johnson's weekly hours.

102.    Mr. Derrick Johnson continued to complain to Shawn Mukarami from Fresenius Human Resources approximately once per month during 2021 about this denial of shifts and overtime.

103.    In February 2021, Mr. Derrick Johnson filed his second EEOC Charge against Fresenius alleging race and disability discrimination.

104.    In March 2021, Fresenius issued Mr. Derrick Johnson his 2020 annual performance review, with lower ratings than his 2019 performance review. Mr. Daryl Johnson and Mr. Brett Heiner issued Mr. Derrick Johnson consistent "3"s in 2020 and no "2"s (which he had been issued in 2019).

105.    Mr. Daryl Johnson and Mr. Brett Heiner also issued Mr. Derrick Johnson a 2.15% merit raise (compared to his pre-complaint merit raise of 2.65%). If Mr. Derrick Johnson had received the same merit raise (2.65%) after his complaints as he did before his complaints, his 2021 hourly wage would have been $25.98 rather than $25.73.

106.    Mr. Daryl Johnson and Mr. Brett Heiner lowered Mr. Derrick Johnson's hourly wage after he complained and issued him lower scores on his annual performance reviews after he complained.

## COUNT ONE

## FAMILY MEDICAL LEAVE ACT – INTERFERENCE

107.    Plaintiff incorporates paragraphs 20 to 43 and 68 to 69 above.

108.   Plaintiff was eligible for FMLA leave and worked at Fresenius for over 12 months before applying for FMLA leave.

109.   Plaintiff was entitled to FMLA leave to care for his minor son during 2015-2019.

110.   Plaintiff was entitled to FMLA leave due to his PTSD, which was a serious health condition which prevented him from performing his job and for which he received ongoing counseling and treatment during 2020 and 2021.

111.   Plaintiff gave proper notice to Fresenius of his need for FMLA leave. Plaintiff applied for and was approved to utilize intermittent FMLA leave each year from 2015 to 2021.

112.   Fresenius interfered with Plaintiff's use of FMLA leave by reducing the number of weekly shifts, hours, routes and overtime to which Plaintiff was assigned each time he returned to work following his FMLA leave.

113.   Fresenius interfered with Plaintiff's use of FMLA leave by incorrectly coding his FMLA leave as "unscheduled PTO" and "call outs" rather than "FMLA PTO."

114.   Fresenius interfered with Plaintiff's use of FMLA leave by using days incorrectly coded as "call outs" to justify issuing Plaintiff lower performance reviews and denying him larger merit increases.

115.   Plaintiff lost both regular hourly wages and overtime wages because

Fresenius reduced his scheduled shifts and overtime assignments.

116.    Plaintiff also suffered a lower hourly wage due to his lower performance reviews and lower yearly merit increases.

117.    After Plaintiff asked why he was being denied route assignments and overtime assignments, Fresenius Human Resources told him it was because he was using FMLA leave.

118.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

119.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT TWO

## FAMILY MEDICAL LEAVE ACT – RETALIATION

120.    Plaintiff incorporates paragraphs 20 to 43 and 68 to 69 above.

121.    Plaintiff was employed by Fresenius.

122.    Plaintiff was eligible for FMLA leave and worked at Fresenius for over 12 months before applying for FMLA leave.

123.    Plaintiff was entitled to FMLA leave to care for his minor son during 2015-2019.

124.   Plaintiff was entitled to FMLA leave due to his PTSD, which was a serious health condition which prevented him from performing his job and for which he received ongoing counseling and treatment during 2020 and 2021.

125.   Plaintiff applied for and was approved to utilize intermittent FMLA leave each year from 2015 to 2021.

126.   During 2015 to 2021, Plaintiff utilized FMLA approximately once per month.

127.   Each time Plaintiff returned from FMLA, Fresenius retaliated against him by reducing his weekly scheduled routes, hours, and overtime assignments.

128.   Fresenius retaliated against Plaintiff by incorrectly coding his FMLA leave as "unscheduled PTO" and "call outs" rather than "FMLA PTO."

129.   Fresenius retaliated against Plaintiff by using FMLA leave incorrectly coded as "call outs" to justify giving Plaintiff lower performance reviews and denying him larger merit increases.

130.   Plaintiff lost both regular hourly wages and overtime wages as a result of the reduction in shift and overtime assignments.

131.   Plaintiff also suffered a lower hourly wage due to his lower performance reviews and lower yearly merit increases.

132.   Fresenius cut Plaintiff's hours, routes, and overtime assignments, incorrectly coded his FMLA leave, issued him lower performance reviews, and

refused to award him higher merit raises (which lowered his hourly wage) because of his use of FMLA leave.

133.    Reducing Plaintiff's hours and pay and issuing him lower performance reviews are adverse employment actions and would have dissuaded a reasonable employee from using FMLA leave.

134.    After Plaintiff asked why he was being denied route assignments and overtime assignments, Fresenius Human Resources told him it was because he was using FMLA leave.

135.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

136.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT THREE

## AMERICANS WITH DISABILITIES ACT – INTERFERENCE

137.    Plaintiff incorporates paragraphs 44 to 54 above.

138.    Plaintiff has a disability. Plaintiff's quadricep muscle tear limits his ability to squat, stoop, and bend.

139.    Plaintiff    has    a    right    to    request    and    receive    a    reasonable

accommodation, including a route which he can perform.

140.    Prior to his injury, Plaintiff primarily drove a slower clinic route with fewer stops, which he requested to return to full time after his injury. Plaintiff could not assist other drivers with the patient home or downtown Birmingham clinic routes on alternating Tuesdays after his injury because of his medical restrictions.

141.    Fresenius interfered with Plaintiff's right to request and receive a reasonable accommodation and punished him by cutting his hours, shift assignments, and overtime, which lowered his pay.

142.    Plaintiff lost wages because of Fresenius's interference with his receipt of a reasonable accommodation and a route which did not conflict with his physical limitations and permanent medical restrictions.

143.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

144.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT FOUR

## §1981 RETALIATION

145.    Plaintiff incorporates paragraphs 55 to 106 above.

146.    Plaintiff complained of race discrimination by filing an EEOC Charge in September 2019.

147.    After Plaintiff complained, Fresenius reduced his average weekly hours from approximately 40-60 to 30-35 by reducing his scheduled shifts and denying him overtime.

148.    Fresenius lowered Plaintiff's pay by cutting his average weekly hours. Plaintiff lost wages due to this reduction in his hours. In 2018, Plaintiff earned $58,318. In 2019, Plaintiff earned $54,228. In 2020, Plaintiff earned $49,739.

149.    Fresenius did not cut the hours of White employees or Black employees who did not complain of race discrimination.

150.    In March 2020, Fresenius issued Plaintiff his 2019 annual performance review with an overall score of 3 out 5 (with 1 being most desirable).

151.    Fresenius criticized Plaintiff in his 2019 performance review for complaining of race discrimination and labelled him "adversarial" and "unapproachable" and urged him to "put others at ease."

152.    Fresenius gave Plaintiff a lower performance review score on the "Core Values" portion of the review (3 out of 5) because of Plaintiff's complaints of race discrimination.

153.    Prior to Plaintiff's EEOC Charges in 2019 and 2021, Fresenius praised Plaintiff for his communication skills and teamwork.

154.    Plaintiff's merit pay increase is tied to his performance review and Plaintiff received a lower merit increase (2.15%) due to this lower performance review. If Plaintiff had received scores of 1 or 2, he would have received a higher merit pay increase, such as the 2.65% increase he received prior to his complaints.

155.    The 3 out of 5 performance review resulted in a lower hourly wage for Plaintiff in 2020 and lowered his pay.

156.    Throughout 2020 Plaintiff complained verbally to Fresenius Human Resources, routers, and his direct supervisors about Fresenius's failure to assign him routes and overtime work.

157.    Throughout 2020 Fresenius continued to lower Plaintiff's average weekly hours, reducing Plaintiff's pay.

158.    In February 2021, Plaintiff filed his second Charge of Discrimination with the EEOC alleging race and disability discrimination and retaliation.

159.    Since Plaintiff filed his second EEOC Charge, Fresenius has continued to deny him regular and overtime route assignments, lowering his pay.

160.    In March 2021, Plaintiff received his 2020 annual performance review. Fresenius scored Plaintiff a 3 out of 5 in all categories on his 2020 performance review (which was lower than his 2019 performance review, which contained a score of 2 in one category).

161.    Fresenius issued Plaintiff a lower 2020 annual performance review and

a 2.15% merit increase (less than the 2.65% he was issued in 2019) because of his complaints of race discrimination.

162.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

163.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT FIVE

## TITLE VII RETALIATION

164.    Plaintiff incorporates paragraphs 55 to 106 above.

165.    Plaintiff complained of race discrimination by filing an EEOC Charge in September 2019.

166.    After Plaintiff complained, Fresenius reduced his average weekly hours from approximately 40-60 to 30-35 by removing him from the work schedule and denying him overtime.

167.    Fresenius lowered Plaintiff's pay by cutting his average weekly hours. Plaintiff lost wages due to this reduction in his hours. In 2018, Plaintiff earned $58,318. In 2019, Plaintiff earned $54,228. In 2020, Plaintiff earned $49,739.

168.    Fresenius did not cut the hours of employees who did not complain of

race discrimination.

169.    In March 2020, Fresenius issued Plaintiff his 2019 annual performance review with an overall score of 3 out 5 (with 1 being most desirable).

170.    Fresenius criticized Plaintiff in his 2019 performance review for complaining of race discrimination and labelled him "adversarial" and "unapproachable" and urged him to "put others at ease."

171.     Fresenius gave Plaintiff a lower performance review score on the "Core Values" portion of the review (3 out of 5) because of Plaintiff's complaints of race discrimination.

172.    Prior to Plaintiff's EEOC Charges in 2019 and 2021, Fresenius praised Plaintiff for his communication skills and teamwork.

173.    Plaintiff's merit pay increase is tied to his performance review and Plaintiff received a lower merit increase (2.15%) due to this lower performance review. If Plaintiff had received scores of 1 or 2, he would have received a higher merit pay increase, such as the 2.65% increase he received prior to his complaints.

174.    The 3 out of 5 performance review resulted in a lower hourly wage for Plaintiff in 2020 and lowered his pay.

175.    Throughout 2020 Plaintiff complained verbally to Fresenius Human Resources, routers, and his direct supervisors about Fresenius's failure to assign him routes and overtime work.

176.    Throughout 2020 Fresenius continued to lower Plaintiff's average weekly hours, reducing Plaintiff's pay.

177.    In February 2021, Plaintiff filed his second Charge of Discrimination with the EEOC alleging race and disability discrimination and retaliation.

178.    Since Plaintiff filed his second EEOC Charge, Fresenius has continued to deny him regular and overtime route assignments, lowering his pay.

179.    In March 2021, Plaintiff received his 2020 annual performance review. Fresenius scored Plaintiff a 3 out of 5 in all categories on his 2020 performance review (which was lower than his 2019 performance review, which contained a score of 2 in one category).

180.    Fresenius issued Plaintiff a lower 2020 annual performance review and a 2.15% merit increase (rather than a 2.65% or greater merit increase) because of his complaints of race discrimination.

181.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

182.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT SIX

## § 1981 FAILURE TO PROMOTE

183.    Plaintiff incorporates paragraphs 87 to 98 above.

184.    Plaintiff was qualified for the Inventory Supervisor position. Plaintiff has fifteen (15) years of experience at Fresenius, including experience training or otherwise instructing other employees.

185.    Fresenius prevented Plaintiff from applying to the Inventory Supervisor position by failing to post or otherwise advertise the position.

186.    Fresenius promoted a less qualified White employee, Kelvin Beasley, to Inventory Supervisor.

187.    Fresenius refused to promote Plaintiff because of his race.

188.    Fresenius refused to allow Plaintiff to apply for the Inventory Supervisor position because of his race.

189.    As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

190.    WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT SEVEN

## § 1981 RACIALLY HOSTILE WORK ENVIORNMENT

191.    Plaintiff incorporates paragraphs 55 to 106 above.

192.    Fresenius harassed Plaintiff because of his race.

193.    Mr. Daryl Johnson told Plaintiff that he preferred to assign shifts and routes to White drivers rather than Plaintiff or other Black drivers.

194.    Mr. Daryl Johnson referred to Black employees as "n*ggas."

195.    Mr. Daryl Johnson and Mr. Brett Heiner accused Plaintiff of being "aggressive," "unapproachable," and not "calm." Plaintiff understood these are racial stereotypes that Black men are "aggressive" and "unapproachable."

196.    Mr. Daryl Johnson and Mr. Brett Heiner refused to promote Plaintiff or other Black employees and instead promoted less qualified White employees.

197.    Fresenius's harassment was so severe or pervasive that the terms and conditions of Plaintiff's employment were altered.

198.    Mr. Daryl Johnson and Mr. Brett Heiner issued Plaintiff lower performance reviews and merit pay increases because of his race.

199.    Fresenius acted with malice or with reckless indifference to Jones's federally protected rights when it discriminated against him by creating a hostile environment based upon his race.

200.    As a proximate result of Fresenius's actions, Plaintiff suffered

financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

201.   WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

## COUNT EIGHT

## TITLE VII RACIALLY HOSTILE WORK ENVIORNMENT

202.   Plaintiff incorporates paragraphs 55 to 106 above.

203.   Fresenius harassed Plaintiff because of his race.

204.   Mr. Daryl Johnson told Plaintiff that he preferred to assign shifts and routes to White drivers rather than Plaintiff or other Black drivers.

205.   Mr. Daryl Johnson referred to Black employees as "n*ggas."

206.   Mr. Daryl Johnson and Mr. Brett Heiner accused Plaintiff of being "aggressive," "unapproachable," and not "calm." Plaintiff understood these are racial stereotypes that Black men are "aggressive" and "unapproachable."

207.   Mr. Daryl Johnson and Mr. Brett Heiner refused to promote Plaintiff or other Black employees and instead promoted less qualified White employees.

208.   Fresenius's harassment was so severe or pervasive that the terms and conditions of Plaintiff's employment were altered.

209.   Mr. Daryl Johnson and Mr. Brett Heiner issued Plaintiff lower

performance reviews and merit pay increases because of his race.

210.     Fresenius acted with malice or with reckless indifference to Jones's federally protected rights when it discriminated against him by creating a hostile environment based upon his race.

211.     As a proximate result of Fresenius's actions, Plaintiff suffered financial loss, loss of dignity, loss of career opportunity, embarrassment, humiliation, emotional distress, and physical pain and suffering.

212.     WHEREFORE Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, and punitive damages; pre-judgment and post-judgment interest; and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court:

A.     Grant a permanent injunction enjoining Fresenius, its officers, successors, assigns, and all persons in active concert or participation with them from engaging further in discriminatory treatment on the basis of race and retaliation based on protected activity;

B.     Order Fresenius to institute and carry out policies, practices, and programs that provide equal provisions and employment opportunities for all employees, and which eradicate the efforts of past and present unlawful employment practices, including implementing a policy against race discrimination, harassment, and retaliation for engaging in protected activities;

C.     Order Fresenius to make Plaintiff whole by providing lost wages, costs, interest, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory and punitive damages;

D.     Award Plaintiff nominal, compensatory, and punitive damages;

E.     Award Plaintiff costs and expenses herein, including reasonable attorneys' fees; and

F.     Award such other and further relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff

**PLAINTIFF'S ADDRESS:**

Derrick Johnson
c/o Alicia K. Haynes
HAYNES & HAYNES P.C.
1600 Woodmere Drive
Birmingham, AL 35226

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

Fresenius USA Manufacturing, Inc.
920 Winter Street
Waltham, MA 02451